[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Margaret Winiarski, a minor, and her mother, Jadwiga Winiarski, commenced this action by service of a summons and complaint on June 25, 1992, against the City and Town of Meriden, the Department of Parks and Recreation of Meriden, and Edward Heath, the Aquatic Director of the Parks and Recreation Department, for injuries sustained by the minor plaintiff while swimming in a municipally-owned pool. The plaintiff was swimming in the pool at Platt High School in the City of Meriden and was injured when she jumped into the shallow end of the pool "stiff-legged." The City concedes that it owns the pool in question.
In the complaint, the plaintiffs allege that they "paid a fee to the defendant City and Town of Meriden in order to be able to use the pool at Platt High School." (Complaint ¶ 3.) As discussed more fully herein, the fee consisted of a $1 charge for a "pool identification tag" issued by the City and required for admittance to City-owned pools.
The complaint alleges one count of negligence against the defendants for: (1) permitting the plaintiff to jump into the pool "stiff-legged"; (2) failing to train or supervise its lifeguards to prevent such occurrences; (3) failing to warn the plaintiff of the hazards and dangers of such behavior; (4) failing to post signs to warn children that jumping into the pool in such a manner was dangerous; (5) failing to recognize that the plaintiff's behavior should be prevented; (6) failing to enforce rules regarding jumping into the pool; and (7) paying "inadequate attention" to the plaintiff to protect her from injury. The plaintiffs seek money damages on this count. The second count of the complaint seeks damages for the minor plaintiff's mother for various hospital and other medical expenses incurred by her on CT Page 12058 behalf of her daughter.
On March 1, 1993, all defendants filed an answer with special defenses, alleging contributory negligence on the part of the minor plaintiff and negligent supervision of the minor plaintiff by her mother. On August 16, 1993, the defendants filed an amended answer with special defenses, asserting, in addition to the defenses of contributory negligence and negligent supervision, that the defendants are immune from liability based on the Recreational Use Statute and the doctrine of governmental immunity set forth in Section 52-557n of the General Statutes.
Finally, on December 19, 1994, the defendants jointly moved for summary judgment, claiming immunity under General Statutes § 52-557g, the so-called Recreational Use Statute. That statute provides, in relevant part: "Except as provided in section 52-557h, an owner of land who makes all or any part of the land available to the public without charge, rent, fee or other commercial service for recreational purposes owes no duty of care to keep the land, or the part thereof so made available, safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on the land to persons entering for recreational purposes." General Statutes § 52-557g(a).
In essence, the defendants contend that since the pool in which the minor plaintiff was injured was open to the public "without charge, rent or fee" as provided in the statute, the municipality is entitled to immunity. In opposition, the plaintiffs argue that the pool is not "held open to the public" for purposes of § 52-557g, and thus, the defendants are not entitled to summary judgment.
Summary judgment should be granted where "the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Lees v. Middlesex Ins.Co., 229 Conn. 842, 849, 643 A.2d 1282 (1994). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact[,] a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citations omitted; internal quotation marks omitted.) Barrett v. DanburyHospital, 232 Conn. 242, 255, 654 A.2d 748 (1995). "Mere CT Page 12059 assertions of fact . . . are insufficient to establish the existence of a material fact, and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." Id. In addition, "[p]leadings per se do not constitute documentary proof under § 380." Paine WebberJackson Curtis, Inc. v. Winters, 13 Conn. App. 712, 721,539 A.2d 595 (1988), aff'd after remand sub nom Connecticut Bank Trust Co. v. Winters, 225 Conn. 146, 622 A.2d 536 (1993).
In support of their motion, the defendants submit the affidavit of Mark Zebora, the Director of the Department of Parks and Recreation of Meriden, in which Mr. Zebora attests that the City of Meriden employs a pool tag system "[i]n order to ensure the orderly use" of the pools in the City. (Zebora Affidavit at ¶ 2.) According to Mr. Zebora, a tag holder is entitled to use "any pool open to the public in the City of Meriden during the summer months." (Affidavit at ¶ 11.) Finally, Mr. Zebora states that the $1 charged for the pool tag is "merely an operational expense to defray the cost of the tags." (Affidavit at ¶ 12.)
In opposition to the motion for summary judgment, the plaintiffs submitted a memorandum of law and a supplemental memorandum of law, but provided no affidavits or other documentary evidence challenging the defendants' affidavit. The plaintiffs' first memorandum of law essentially asserts that the pool tag fee charged by the City means that the pool is not "open to the public" as required by § 52-557g for recreational use immunity to apply. Plaintiffs' argue that "[t]here can be no question . that the purpose of the pool tag [system] is to enable a municipality to decide which individuals it [will] make the land available [to] for recreational purposes, and to whom they will not [sic]." (Plaintiffs' memorandum at pp. 3-4.) Therefore, plaintiffs conclude that the land is not held open to the public, and the defendants are not entitled to immunity.
In their supplemental memorandum of law, the plaintiffs shift emphasis entirely. Rather than focusing on whether the pool was "open to the public" for purposes of § 52-557g, the plaintiffs instead address the distinction between land held open for recreational use and municipal buildings used by the public. In essence, the plaintiffs argue that since the injury occurred in a pool that was contained in a municipal building, general principles of premises liability — and not § 52-557g — should apply. CT Page 12060
It is noted that nowhere in plaintiffs' memorandum of law or supplemental memorandum of law do they argue that a genuine issue of material fact exists to bar summary judgment.
As noted above, summary judgment motions are defeated by the non-moving party upon a simple showing that an issue of fact exists requiring a trial. Here, however, the plaintiffs have failed to put forth even one issue of fact in opposition to the motion. Rather, plaintiffs argue only points of law, and fail to elucidate controlling Connecticut cases in support of their position. Under such circumstances, this court could grant the defendants' motion on that basis. See Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990) (holding that "the trial court did not err in granting the defendant's motion [for summary judgment] because the plaintiff failed to present evidence in opposition to the defendant's [contentions].") Nonetheless, an analysis of plaintiffs' arguments is necessary to determine whether the defendants are entitled to judgment as a matter of law.
Plaintiffs' first argument is that the $1 fee charged by the City deprives the City of the protection of the Recreational Use Statute Plaintiffs' counsel argues that the pool tag fee is "central" to the issue of whether the pool was made available to the public within the meaning of § 52-557g and that "the plain truth is that the land was only made available for recreational purposes in exchange for a monetary sum charged to each individual who wished to make use of the land" (Plaintiff's memorandum at p 4.)
The affidavit submitted by the defendants, however, belies this allegation According to the affidavit of the Director of the Parks and Recreation Department, the $1 pool tag fee entitles the holder to unlimited access at any municipal pool during the summer months, and is used to offset the administrative expenses and costs incurred in providing the tags. Moreover, the pool tags are used for what is essentially "crowd control," since their purpose is to "prevent overcrowding at the pools." (Defendants' memorandum in support p. 2). Although not entirely clear from the defendants' submissions, the affidavit of the Director of the Parks and Recreation Department suggests that Meriden residents pay the $1 fee at the beginning of the season and the pool tags are valid throughout the summer.
It should also be noted that the word "public" for purposes CT Page 12061 of General Statutes § 52-557g is not all-inclusive. "Although the purpose of the [Recreational Use Statute] is to make land accessible for recreational use by the public, nothing in the language of § 52-557g(a) mandates that land, in order to be `available to the public' under the act, must be open in its entirety to everyone simultaneously" Scrapchansky v.Plainfield, 226 Conn. 446, 452, 627 A.2d 1329 (1993). In other words, "[f]or an area to be open to public use[,] it does not have to be open to everybody all the time." (Internal quotation marks omitted.) Id.
While plaintiffs are correct that § 52-557g does not address the amount of any fee charged, cases have held that fees which are administrative or operational in nature do not constitute "charges" for purposes of abrogating the immunity provided by the Recreational Use Statute. See, e.g., Genco v. Connecticut Light Power Co., 7 Conn. App. 164, 171, 508 A.2d 58 (1986) (holding that a fee charged by a marina to dock boats "is not an admission price but merely an operational or maintenance charge"); Pare v.Malone, 13 Conn. L. Rptr. 141, 141-42 (January 6, 1995, Stengel, J.) (holding that an annual fee charged to teams to defray the costs of operating a municipal softball league is not a "charge" within the meaning of § 52-557g); Luce v. City of West Haven,12 Conn. L. Rptr. 401, 402 (September 8, 1994, Skolnick, J.) (same);Williams v. City of Waterbury, 12 Conn. L. Rptr. 158, 159 (July 15, 1994, Sylvester, J.) (holding that immunity under the recreational use statute "is still available if a fee is charged in order to cover the maintenance and operations of the recreational facility, as long as the fee is not an admission charge.").
In this case, the defendants contend that the $1 fee for the pool tag is used to offset the cost of providing the tags. The plaintiffs have provided no evidence to contradict this allegation. Notably, in Sanez v. Town of Westport, 8 CSCR 501,502 (April 29, 1993, Rush, J.), the court, Rush, J., held that a park owned by the defendant municipality was "held open to the public" within the meaning of § 52-557g even though the defendant employed a "hand pass" system for members of the public to use municipal recreational facilities. The court stated: "[T]he contentions of the plaintiffs are not sufficient to contradict the direct claims made in the affidavit submitted on behalf of the moving defendants that the [recreational] facilities are open to members of the general public without charge and that a hand pass is not required to enter those facilities utilized by the CT Page 12062 minor plaintiff. Accordingly, the court concludes that the recreational facilities upon which the minor plaintiff was injured are `available to the public without charge, rent, fee or other commercial service' within the meaning of General Statutes § 52-557g." Id., 502.
It should be noted that there are cases which have held that summary judgment should be denied where there is an issue as to whether a specific fee in question constitutes a "charge" within the meaning of § 52-557g. See, e.g., Fotia v. Housing Authorityof the Town of Greenwich, 14 Conn. L. Rptr. No. 5, 161, 162 (March 16, 1995, Lewis, J.) (issue as to whether rent fees at an apartment complex include a charge for using common basketball courts); Wiersch v. State, 13 Conn. L. Rptr. No. 19, 598, 600 (March 8, 1995, Hurley, J.) (issue as to whether a parking fee at a state park constitutes a charge under § 52-557g). However, in this case, the plaintiffs do not appear to factually contest that the pool tag fee constitutes a charge under the statute; rather, they seem to suggest that, as a matter of law, by requiring a pool tag, the City is admitting some members of the public to the pools while excluding others. In other words, the plaintiffs do not seem to argue that there exists a genuine issue of fact as to whether the $1 fee — in comparison with some other monetary value — constitutes a charge within the meaning of § 52-557g.
In summary, since the uncontroverted evidence provides that the $1 fee charged by the City is merely an operational or administrative fee used to offset the cost of providing a pool tag, and since the plaintiffs have not asserted that there is an issue of material fact as to the nature of the fee charged by the defendant City, therefore the plaintiffs have not met their burden of demonstrating that a genuine issue of material fact exists requiring trial and thus, summary judgment must be granted.
The second prong of the plaintiffs' argument, addressed in their supplemental memorandum of law, is that because the injury occurred at an indoor pool owned and operated by the City, the Recreational Use Statute does not apply. In support of this position, plaintiffs rely on Maynard v. City of New London,
13 Conn. L. Rptr. No. 14, 447 (January 30, 1995) (Hurley, J.), and several New York cases. In Maynard, the court, Hurley, J., held that § 52-557g was not available to the defendant City of New London where the plaintiff's injury occurred at a basketball court within a municipally-owned building. The court CT Page 12063 distinguished between "outside parks" accessible to the public and municipal buildings held open to members of the public for various activities. Id., 449.
The court stated: "If the provisions of our Recreational Use Statute applied to municipal buildings maintained by the city and held open to the public, an arbitrary and unacceptable distinction would arise between the duty of care owed to one who enters the public building to engage in a recreational activity and that owed to one who enters the building for some other purpose." Id., 449. On that basis, the court concluded that the defendant City was not entitled to immunity under § 52-557g as a matter of law.
However, at least one Superior Court judge has reached the opposite conclusion. In Philipcik v. Richardson, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 115963 9 Conn. L. Rptr. 339 (July 1, 1993) (Lewis, J.), the court, Lewis, J., held that the Recreational Use Statute is not limited to outdoor use. The plaintiff in that case argued that the defendant, Commissioner of Mental Retardation, was not entitled to immunity under § 52-557g
because her injury was sustained at an indoor pool which was owned and maintained by the State of Connecticut. The plaintiff argued that the pool was not open to the general public "because the pool is available for therapeutic swimming only when an individual has a note from the doctor, or is accompanying a handicapped or disabled person." Id.
In support of her contentions, the plaintiff relied on a Pennsylvania case which dealt with a substantially similar recreational use statute. The court stated: "The plaintiff has not produced authority to support her proposition concerning outdoor use based on Connecticut law, and the case law in Pennsylvania is, of course, not conclusive on this issue." The court further noted that the provisions of § 52-557g enumerating activities subject to recreational use immunity "are not exclusive." Id. Thus, the court concluded that § 52-557g was not limited to outdoor activities.
The court finds that the defendants have sufficiently shown that the $1 "pool tag fee" constitutes an administrative or operational charge, and that the plaintiffs have failed to demonstrate a material factual issue, therefore the defendants' motion for summary judgment is granted on the basis that there is no issue of material fact warranting trial, and the defendants CT Page 12064 are immune by virtue of the Recreational Use Statute.
Howard F. Zoarski, Judge